| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| EASTERN DISTRICT OF CALIFORNIA | |
| ANTHONY L. ROBINSON,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DAVE DAVEY, et al.,<br><br>　　　　Defendants. | 1:17-cv-01524-DAD-GSA-PC<br><br>**ORDER FINDING COGNIZABLE CLAIMS**<br><br>**ORDER REQUIRING PLAINTIFF TO EITHER:**<br>**(1) FILE A SECOND AMENDED COMPLAINT,**<br>　　**OR**<br>**(2) NOTIFY THE COURT THAT HE IS WILLING TO PROCEED ONLY WITH THE CLAIMS FOUND COGNIZABLE BY THE COURT**<br><br>**THIRTY-DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT OR NOTIFY THE COURT OF WILLINGNESS TO PROCEED** |

**I.　BACKGROUND**

Anthony L. Robinson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on November 15, 2017. (ECF No. 1.)

Plaintiff's original Complaint was unsigned. On May 22, 2018, the court issued an order striking the Complaint for lack of signature and granted Plaintiff thirty days to submit a

1

signed complaint. (ECF No. 20.) On July 2, 2018, Plaintiff filed a First Amended Complaint bearing his signature. (ECF No. 24.) The First Amended Complaint is now before the court for screening. 28 U.S.C. § 1915A.

## II. SCREENING REQUIREMENT

The court is required to screen complaints in civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently a state prisoner in the custody of the California Department of Corrections and Rehabilitation, incarcerated at Corcoran State Prison in Corcoran, California,

where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff names as defendants Dave Davey (Warden), Lieutenant (Lt.) Munoz, Correctional Officer (C/O) K. Welch, C/O H. German, Jr., C/O N. J. Blevins, C/O J. D. Wilson, S. Gonzales-Thompson (LVN), Lt. A. V. Johnson, and Sergeant (Sgt.) A. Peterson (collectively, "Defendants").

Plaintiff's allegations follow. On June 13, 2013, defendants custody officers H. German, Jr., and K. Welch escorted Plaintiff from the outdoor exercise cages back to his cell. After Plaintiff was secured in his cell he requested to speak to their supervisor, defendant Sgt. A. Peterson about Plaintiff's grievances and form 22 requests that Sgt. Peterson had not timely responded to or returned.

Defendants German and Welch asked Plaintiff a few times to give up the waist chain mechanical restraints. Plaintiff sat at the edge of his bed repeating, "I need to talk to Sergeant Peterson." ECF No. 24 ¶19. After defendants German and Welch conspired with each other to take matters into their own hands, and avoid informing their immediate supervisor Sgt. Peterson, defendant German walked to the rotunda area to inform the control booth officer, defendant N. J. Blevins, and floor officers Messick [not a defendant] and Gallardo [not a defendant] that Plaintiff would not give up the waist chain handcuffs.

Plaintiff saw defendant Blevins observing Plaintiff sitting at the foot of the bed wearing only boxer shorts, shoes and socks. Plaintiff was not expecting anything to occur since he was securely confined behind the closed door.

Defendant German said, "So, you're not going to give me my waist chain," and Plaintiff responded that he needed to talk to Sgt. Peterson. In violation of CDCR policies, defendant German sprayed Plaintiff in his cell with pepper spray through the open tray port. Defendant German sprayed Plaintiff on the left side of his head, face, eye, ear, neck, chest, shoulder, and stomach area with burning chemicals, then closed the tray port.

Plaintiff grabbed his jumpsuit out of panic, moved to the cell door area in shock, gasping for air, and put his face in the right side of the door trying to get some air. Plaintiff could not breathe because he is asthmatic, and he could not see once he got to the door.

///

Once Plaintiff regained his breath, he yelled through the side of the door that defendant German had sprayed him for no reason, trying to kill him, so that inmates and staff could hear what transpired. Defendant German asked for the waist chain and Plaintiff said, "Here is your waist chain[], open the tray port." ECF No. 24 ¶28. Defendant German ordered Plaintiff to get on his knees with his back to the door, to which Plaintiff complied. A second time, defendant German sprayed Plaintiff with pepper spray through the open tray port in the back of his head, neck, and back. Plaintiff got up and went to the door, and defendant German closed the tray port and walked to the rotunda area where officers Welch, Messick, and Galardo were watching the incident. Defendant German told an officer to hit the emergency alarm button, which she did.

Sgt. Peterson, Sgt. Wilson, and another sergeant came to Plaintiff's cell to get the waist chains. Plaintiff explained to Sgt. Peterson everything that defendant German had done. Sgt. Peterson asked Plaintiff if he held the tray port, and Plaintiff said, "No, I had the waist chain because I needed to talk to you about CDCR 22 forms request for interviews, you didn't return or respond to them, no need to hold the tray port, which is impossible while the waist chain [is] on Plaintiff's waist and handcuffs on both wrists." ECF No. 24 ¶30.

Plaintiff allowed Sgt. Peterson to remove his handcuffs and gave him the waist chain. Plaintiff asked Sgt. Peterson for a decontamination, which is required by CDCR procedure, but Sgt. Peterson denied Plaintiff a shower to rinse off the burning pepper spray. Plaintiff was denied medical treatment and a shower by defendant LVN S. Gonzales-Thompson, who knew Plaintiff has asthma and mental illness, which prohibits Plaintiff being pepper sprayed. Defendant Gonzales-Thompson failed to inform custodial defendants that Plaintiff was asthmatic, deliberately failed to inform Plaintiff's psychologist and psychiatrist about the situation before force was used, and denied Plaintiff his inhalers. Defendant Gonzales-Thompson did not come to Plaintiff's cell at all to medically evaluate and interview him, which is required by medical post orders and regulations.

When custody officers use force on inmates it is the medical officer's duty to write a 7219 report of injury or unusual occurrence. Defendant Gonzales-Thompson falsified

documents and did not interview or examine Plaintiff about the incident, as required. Defendant Gonzales-Thompson covered up the custody officers' crime and misconduct, aiding and conspiring with them under the Code of Silence for the Green Wall prison guards gang.

Defendant Gonzales-Thompson conspired with defendants German and Welch and filed a false report on Plaintiff's medical records. Defendant Gonzales-Thompson failed to notify mental health officials about the "false alleged 'holding the tray port incident'" prior to use of force. ECF No. 24 at 15:17-18. The doctors were supposed to be notified, to come and talk to Plaintiff, to persuade him to give up the handcuff waist restraints or release the food tray port, called a "deescalate situation cool down period," to prevent a cell extraction and use of force, according to rules in the Department Operations Manual. ECF No. 24 at 15:23-24.

Defendant Sgt. Peterson conspired with Lt. Johnson, Sgt. Wilson, Officer Blevins, and Officer Welch to cover up the attack by defendant German against Plaintiff, by entering false information on Plaintiff's 115 Rule Violation Report, CDCR 837-C Crime Incident Report, and CDCR 7219 Medical Report about the false allegation that Plaintiff was holding the food tray port. Defendant German charged Plaintiff with obstructing a peace officer resulting in use of force. Defendant Peterson reviewed and signed the CDCR 115 RVR. Defendant Johnson, defendant Peterson's supervisor, classified the RVR as a serious offense with 61-90 days credit loss, and signed the Crime Incident Report which consists of all staff's names who did a report on the incident, all the defendants stating the same false allegation to justify use of force. Plaintiff contends that according to policy for a mental health patient, Defendants were not allowed to use force. Plaintiff did nothing to justify any use of force.

All of the Defendants had training in use of force policies and knew they can't use force on inmates in cells in non-emergency situations without authorization from the Warden, and they deliberately lied to cover up for defendants Welch and German.

On July 3, 2013, Senior Hearing Officer Munoz found Plaintiff guilty of the Rules Violation - Obstructing a Peace Officer, Resulting in the Use Of Force - written by defendant German. Defendant Munoz is a Lieutenant who is knowledgeable and has participated in cell extractions, but he found Plaintiff guilty to justify spraying Plaintiff with pepper spray, which

violates policy. Defendant Munoz covered up Defendants' misconduct despite his duty to protect Plaintiff. The guilty finding was not supported by evidence, violates Plaintiff's due process and equal protection rights, and constitutes negligence, and the RVR should be vacated and rescinded.

Plaintiff exhausted his appeals against defendants German, Welch, and Blevins. Plaintiff also filed and exhausted appeals against defendants Gonzales-Thompson and Munoz.

Plaintiff seeks monetary damages including punitive damages, injunctive relief, declaratory relief, and costs of suit.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th

Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. **Supervisory Liability**

Plaintiff has named defendants who hold supervisory positions. Plaintiff is advised that "[l]iability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Therefore, to the extent that Plaintiff seeks to impose liability upon any of the defendants in their supervisory capacity, Plaintiff fails to state a claim.

### B. **Due Process -- Loss of Good-time Credits**

Plaintiff alleges that defendant Johnson classified Plaintiff's Rules Violation Report as a serious offense with "61-90 days good time, work time credit loss." ECF No. 24 at 17:7-8. Plaintiff has not alleged that he did forfeit credits or if so, how many credits, when he was found guilty of the Rules Violation. Plaintiff requests that his RVR be vacated and rescinded.

When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475 (1973); Young v. Kenny, 907 F.2d 874 (9th Cir. 1990), cert. denied 11 S.Ct. 1090 (1991). Moreover, when seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that

the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck v. Humphrey, 512 U.S. 477, 487-88 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 488. This "favorable termination" requirement has been extended to actions under § 1983 that, if successful, would imply the invalidity of prison administrative decisions which result in a forfeiture of good-time credits. Edwards v. Balisok, 520 U.S. 641, 643–647 (1997).

Plaintiff's First Amended Complaint does not contain any allegations showing that Plaintiff's finding of guilt, resulting in a forfeiture of credits, has been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus. Thus, Plaintiff is barred by Heck and Edwards from pursuing any claims under § 1983 concerning the process he was provided which resulted in the forfeiture of good time credits.

Plaintiff shall be granted leave to amend the First Amended Complaint to clarify his allegations concerning this claim.

### C. Discrimination -- Equal Protection Clause

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class,"' (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for violation of his right to equal protection.

### D. **Excessive Force**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The court finds that Plaintiff states a claim against defendant H. German, Jr., for use of excessive force in violation of the Eighth Amendment, for using pepper spray against Plaintiff.

**E.     Conspiracy**

Plaintiff alleges that Defendants conspired with each other to violate his rights. In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Plaintiff has not alleged any facts supporting the allegation that any of the Defendants entered into an agreement or had a meeting of the minds to violate Plaintiff's constitutional rights. Therefore, Plaintiff fails to state a claim for conspiracy.

**F.     False Reports**

Plaintiff claims that Defendants made false reports about his rules violation, the reasons he was pepper sprayed, and his medical condition. These allegations, even if true, do not raise a constitutional claim because there is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750,

n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff has no protected liberty interest against false information being reported against him.

### G. Medical Claims -- Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate
///

indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff alleges that he was sprayed twice with pepper spray and afterward, when he asked defendant Sgt. Peterson to allow him to decontaminate himself by taking a shower to rinse off the burning pepper spray, defendant Peterson denied his request. Plaintiff also alleges that defendant Gonzales-Thompson (LVN) denied him medical treatment, a shower, and use of his inhalers, and failed to come to Plaintiff's cell to medically evaluate him.

Plaintiff has shown that he had serious medical needs because his skin was burning from the pepper spray and he was having trouble breathing. The court finds that Plaintiff's allegations that his requests were denied to take a shower to decontaminate from the pepper spray and to use his inhalers are sufficient to state an Eighth Amendment medical claim against defendants Peterson and Gonzales-Thompson.

### H. California's Government Claims Act

Plaintiff alleges that Defendants were negligent in their duties to protect Plaintiff and to comply with the prison's rules written in the Department Operations Manual and the CDCR's procedures, policies, and regulations. Plaintiff also claims that Defendants intentionally inflicted emotional distress on him. These are state law claims.

To the extent that Plaintiff seeks to pursue tort claims under California law, the Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board (CVCGCB) no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950, 950.2. Presentation of a written claim and either action on or rejection of the claim are conditions precedent to suit, DiCampli–Mintz v. Cnty. of Santa Clara, 55 Cal.4th 983, 989–90, 289 P.3d 884, 887 (Cal.2012); Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208–09 (Cal.2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal.2004), and suit must then be commenced not later than six months after the date the written rejection notice was deposited in the mail, Cal. Gov't Code § 945.6(a)(1) (quotation

///

marks omitted); Clarke v. Upton, 703 F.Supp.2d 1037, 1043 (E.D. Cal. 2010); Baines Pickwick Ltd. v. City of Los Angeles, 72 Cal.App.4th 298, 303 (Cal.Ct.App.1999).

"[T]he intent of the Government Claims Act is not to expand the rights of plaintiffs against government entities but to confine potential governmental liability to rigidly delineated circumstances," and compliance with the Government Claims Act is an element of Plaintiff's state law tort claims which he is required to prove. DiCampli–Mintz, 55 Cal.4th at 991, 289 P.3d at 888 (citations and internal quotation marks omitted); Atchison, Topeka & Santa Fe Ry. Co. v. Stockton Port Dist., 140 Cal.App.3d 111, 115, 189 Cal.Rptr. 208 (Cal.Ct.App.1983); Chase v. State of California, 67 Cal.App.3d 808, 812, 136 Cal.Rptr. 833 (Cal.Ct.App.1977).

Here, Plaintiff has not alleged compliance with the Government Claims Act or submitted evidence showing that he presented a written claim to CVCGCB that was acted upon or rejected within the applicable time period. Therefore, Plaintiff's state law tort claims fail. Plaintiff shall be granted leave to file an amended complaint to address the deficiencies in these claims.

**I.      Cover-up**

Plaintiff alleges that some of the Defendants covered up the wrongdoing against Plaintiff. To the extent that Plaintiff attempts to raise a cover-up claim, it is premature. Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived a plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover-up. Dell v. Espinoza, No. 116CV1769MJSPC, 2017 WL 531893, at *6–7 (E.D. Cal. Feb. 7, 2017) (citing see Karim-Panahi, 839 F.2d at 625 (cover-up "allegations may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit.")); Rose v. City of Los Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993).

A cover-up claim is premature when, as here, Plaintiff's action seeking redress for the underlying constitutional violations remains pending. See Karim-Panahi, 839 F.2d at 625 (claim alleging police cover-up of misconduct was premature when action challenging misconduct was pending); Rose, 814 F. Supp. at 881 ("Because the ultimate resolution of the

present suit remains in doubt, [p]laintiff's cover-up claim is not ripe for judicial consideration.")

### J. Doe Defendants

In his allegations, Plaintiff mentions an "unknown sergeant (hereafter Sgt. John Doe)" who accompanied Sgt. Peterson and Sgt. Wilson to Plaintiff's cell to get the waist chains. (ECF No. 24 at 12 ¶30.) Plaintiff did not include a John Doe defendant in his list of named defendants in the First Amended Complaint. If Plaintiff wishes to add a John Doe defendant, he must clearly indicate this in an amended complaint. Plaintiff is advised that unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff states cognizable claims under the Eighth Amendment against defendant German for use of excessive force, and against defendants Peterson and Gonzales-Thompson for inadequate medical care. However, Plaintiff fails to state any other claims against any of the Defendants upon which relief may be granted under § 1983. Plaintiff shall be required to <u>either</u> file a Second Amended Complaint, <u>or</u> notify the court of his willingness to proceed only with the claims found cognizable by the court. Should Plaintiff choose to proceed only on the claims found cognizable by the court, the court will begin the process to initiate service upon defendants German, Peterson, and Gonzales-Thompson by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The court will provide Plaintiff with time to file a Second Amended Complaint curing the deficiencies identified above. Plaintiff is granted

///

leave to file a Second Amended Complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of the complaint or adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on November 15, 2017.

If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

///

///

///

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   (1) File a Second Amended Complaint curing the deficiencies identified in this order, or
   (2) Notify the court in writing that he does not wish to file an amended complaint and is instead willing to proceed with only the excessive force claim against defendant German and the medical claims against defendants Peterson and Gonzales-Thompson found cognizable by the court;
3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:17-cv-01524-DAD-GSA-PC; and
4. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated: **October 26, 2018**                **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE